UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Cup Foods Incorporated, | Case No. 22-cv-1620 (WMW/DJF) |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNTS I AND II OF PLAINTIFF'S AMENDED COMPLAINT |
| Travelers Casualty Insurance Company of America, | |
| Defendant. | |

This matter is before the Court on Defendant Travelers Casualty Insurance Company of America's (Travelers) motion to dismiss counts I and II, (Dkt. 15), of Plaintiff Cup Foods Incorporated's (Cup Foods) amended complaint.[1]  Cup Foods opposes Traveler's motion.  For the reasons addressed below, the Court grants Traveler's motion to dismiss.

## BACKGROUND

Cup Foods is a retail business at the intersection of 38th Street East and Chicago Avenue South in Minneapolis, Minnesota.  Travelers is an insurance corporation based in Connecticut.  Pursuant to an insurance contract (Policy) between the parties, Travelers pledged to provide commercial general liability coverage to Cup Foods, effective January 18, 2020, to January 18, 2021.  Cup Foods timely paid its premiums under the Policy.

---

[1]  On December 7, 2022, Travelers filed a stipulation of partial dismissal with prejudice of the second amended complaint (Count III only).  The Court addresses this filing in the final section of this Order.

I.  **Events and Aftermath of May 2020.**

In May 2020, Minneapolis Police Officer Derek Chauvin killed George Floyd directly in front of Cup Foods. Various forms of civil unrest transpired throughout Minneapolis in the days immediately after Mr. Floyd's death. Between May 25, 2020, and June 8, 2020, the City of Minneapolis (City) placed cement barriers on Chicago Avenue South 38th Street East, in a total of four locations that tracked each side of the intersection between Chicago Avenue and 38th Street (Intersection). Private individuals supplemented these barriers with additional structures, including ad hoc barricades and mementos. The barriers and supplemental structures did not completely enclose the Intersection. The barriers "redirected vehicle traffic and public transit," but vehicles could drive through the Intersection within the barriers when admitted through a gate or the ad hoc barricades.

**B. Cup Foods' Claims Under the Policy.**

On June 8, 2020, Cup Foods submitted to Travelers the first of six insurance claims that Cup Foods would make in 2020 under the Policy. Travelers' motion implicates the business income provision of the Policy, which states that Travelers will

> pay for the actual loss of Business Income [Cup Foods] sustain[s] due to the necessary "suspension" of [Cup Foods'] "operations" during the "period of restoration." The suspension *must be caused by direct physical loss of or damage to property* at [Cup Foods]. The loss or damage must be caused by or result from a Covered Cause of Loss.

> The civil authority extension augments the business income provision for:

> the actual loss of Business Income [Cup Foods] sustain[s] and reasonable and necessary Extra Expense [Cup Foods] incur[s] caused by action of civil authority that prohibits access to [Cup Foods]. *The civil authority must be due to direct*

2

> *physical loss of or damage to property* at locations other than [Cup Foods] that are within 100 miles of [Cup Foods], caused by or resulting from a Covered Cause of Loss.

(Internal quotation marks omitted). As of June 8, 2020, the date Cup Foods initiated this matter, Travelers had not approved any of Cup Foods' claims nor made any insurance payments to Cup Foods. As a result, Cup Foods initiated this matter, alleging three breach-of-contract claims against Travelers.

Cup Foods alleges in Count I that Travelers breached the Policy by failing to reimburse Cup Foods for covered business-income losses. In support of this claim, Cup Foods alleges that the placement of third-party structures around and throughout the Intersection caused a loss of "parking spaces, sidewalk access and a public bus stop" near its storefront and a "partial suspension" of its business operations, and that "armed and unarmed community members . . . physically blocked access" to Cup Foods and its premises. These occurrences, Cup Foods alleges, constitute a covered loss that Travelers failed to reimburse in breach of the Policy.

Cup Foods alleges in Count II that Travelers breached the Policy by failing to reimburse Cup Foods for covered civil-authority extension losses. In support of this claim, Cup Foods alleges that the City placed cement barricades at the Intersection that "redirected vehicle traffic and public transit away from Cup Foods," and that the City did so in response to "evolving civil unrest and accompanying property damage in south Minneapolis." These occurrences, Cup Foods alleges, constitute a covered loss that Travelers failed to reimburse in breach of the Policy.

Travelers moves to dismiss Counts I and II of Cup Foods' amended complaint.

ANALYSIS

**I.     Standard of review**

To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, establish a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); *see also* Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss, the district court must accept as true the factual allegations of the complaint and draw all reasonable inferences in favor of the plaintiff. *See Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A plaintiff may not rely on, nor may a district court consider, legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678-79.

Travelers addresses as a threshold matter which documents beyond the complaint—if any—the Court may consider in its decision. When deciding a motion to dismiss, a district court may consider in addition to the complaint any document necessarily "embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir 1999) (internal quotation marks omitted). Documents are necessarily embraced by the pleadings when the pleadings allege the contents of those documents and no party questions their authenticity. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). In breach-of-contract cases, the subject contract typically constitutes a document embraced by the pleadings. *See Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014).

Travelers argues that the Court should treat the Policy as a document embraced by the pleadings. Cup Foods does not object. The amended complaint references the Policy and neither party disputes the Policy's authenticity. *See Zean*, 858 F.3d at 526. The Policy, therefore, constitutes as a document embraced by the amended complaint. *See Gorog*, 760 F.3d at 791.

Travelers' motion as to Counts I and II turns, respectively, on the meaning of the phrases "direct physical loss of or damage to property" as used within the Business Income Provision of the Policy and the Civil Authority Extension of the Policy. The interpretation of insurance terms presents a question of law, *see Haarstad v. Graff*, 517 N.W.2d 582, 584 (Minn. 1994), to which the Court now turns.

   a. **Count I: Business Income Provision**

The parties disagree whether the facts that Cup Foods alleges in support of Count I constitute "physical harm" and "damage to property" under the Policy's business income provision. Cup Foods specifically alleges that physical damage occurred with the placement of barriers, supplemental structures and mementos on and around its premises and with the presence of community members who regularly occupied space in and around the Intersection. Travelers argues that Cup Foods has not alleged physical harm or damage to property because Cup Foods' claims focus "solely on physical impediments to customer traffic *outside* the store." Cup Foods, however, responds that a "physical change *at* the premises" occurred when the City and community introduced "mementos, barricades, and structures" within the Intersection that impaired Cup Foods' ability to function as a grocery store.

5

Minnesota law governs this Court's interpretation of the Policy. *See Plus Coop. v. Cont'l Cas.*, 516 F.3d 674, 678 (8th Cir. 2008). Standard principles of contract law govern the construction of an insurance policy. *See Nathe Bros., Inc. v. Am. Nat'l Fire Ins.*, 615 N.W.2d 341, 344 (Minn. 2000). When an insurance policy employs unambiguous language, the "usual and accepted meaning" prevails. *Lobeck v. State Farm Mut. Auto. Ins.*, 582 N.W.2d 246, 249 (Minn. 1998) (internal quotation marks omitted). The burden of proving coverage rests with the insured party. *See UnitedHealth Grp. Inc. v. Columbia Cas. Co.*, 47 F. Supp. 3d 863, 873 (D. Minn. 2014); *Eng'g & Constr. Innovs., Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 705 (Minn. 2013).

Because the Policy does not define "direct physical loss" or "damage to property," the Court looks to "the usual and accepted meaning" of these terms. *Lobeck*, 582 N.W.2d at 249. Under Minnesota law, the plain meaning of "direct physical loss" requires "only that a covered property be injured, not destroyed." *Sentinel Mgmt. Co. v. New Hampshire Ins.*, 563 N.W.2d 296, 300 (Minn. Ct. App. 1997). In applying this definition in the insurance-coverage context, courts have found that an injury may encompass tangible and lasting changes to the insured property, *see, e.g., Cedar Bluff Townhome Condo. Ass'n., Inc. v. Am. Fam. Mut. Ins.*, 857 N.W.2d 290, 295 (Minn. 2014), as well as more nuanced harms, like the contamination of insured property from asbestos or smoke, *see, e.g., Sentinel*, 563 N.W.2d at 300.

While Minnesota law accepts various manifestations of an injury, caselaw uniformly requires that an injury (and consequently, any direct physical loss) result in something more than an insured's inability to use property for its intended purpose. *See*

6

*Pentair, Inc. v. Am. Guar. & Liab. Ins. Co.*, 400 F.3d 613, 616 (8th Cir. 2005) (applying Minnesota law). Instead, true injury requires a "distinct, demonstrable, and physical alteration." *Cedar Bluff*, 857 N.W.2d at 295; *see also NMA Invs. LLC v. Fid. & Guar. Ins. Co.*, --- F. Supp. 3d ---, 2022 WL 4226226, at *4 (D. Minn. 2022).

Cup Foods points to the barriers, objects and people within and around the Intersection as the source of the physical loss and property damage that its first claim alleges. Travelers responds that these facts do not meet the legal definition of physical damage or property loss because no injury occurred. None of the barriers situated within the Intersection were permanent or affixed to Cup Foods' covered property, Travelers argues, and the mementos placed near Cup Foods as well as the people who visited the Intersection could be moved and did move about the Intersection.

The physical-loss and property-damage standard requires "some *physicality* to the loss or damage of property." *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021) (emphasis added); *see also NMA Invs.*, 2022 WL 4226226, at *4. Travelers, therefore, is correct that no covered injury occurred at Cup Foods, because none of the losses or injuries that Cup Foods cites satisfies the requisite physicality of a covered injury. Although the objects and people occupied physical space throughout the Intersection, no "distinct, demonstrable, [or] physical alteration" occurred because of the presence of these objects. *Cedar Bluff*, 857 N.W.2d at 295. These people and objects could have moved or been moved. Nothing about their position affixed them to Cup Foods permanently or in a manner that would require damage or alternation to Cup Foods prior to their removal. The presence of objects and people throughout the Intersection

did not alter Cup Foods and its premises in the manner that the application of a pesticide contaminates crops, *see Gen. Mills, Inc. v. Gold Medal Ins.*, 622 N.W.2d 147, 150, 152 (Minn. Ct. App. 2001), or that paint alters a building when it adheres to a surface once dry, *see Cedar Bluff*, 857 N.W.2d at 295.

Cup Foods argues that the barriers, objects and people within the Intersection support a claim for physical loss or damage to property because they occupied physical space in the same way that asbestos fibers entered into the airspace of buildings. *See, e.g.*, *Sentinel* 563 N.W.2d at 300. While caselaw addressing asbestos contamination arguably broadens the meaning of "physical loss" and "damage to property," or at least demonstrates the extension of these definitions to novel factual circumstances, the requirement that some physicality accompany the alleged loss or damage remains. *See, e.g.*, *Pentair*, 400 F.3d at 616; *Oral Surgeons*, 2 F.4th at 1144; *NMA Invs.*, 2022 WL 4226226, at *4. In each case, some physicality to the harm that the presence of asbestos fibers cause is identified. *See, e.g.*, *Sentinel*, 563 N.W 2d at 300 (finding that "released asbestos fibers ha[d] contaminated" the building at issue). Here, Cup Foods has not alleged any facts that suggest the objects or people throughout the Intersection physically altered, contaminated or otherwise harmed any part of Cup Foods in a manner comparable to the effect of asbestos. *See NMA Invs.*, 2022 WL 4226226, at *4 (rejecting laundromat's claim that the presence of barriers, mementos or people at the 38th and Chicago Intersection constitutes "physical loss" or "property damage" within the meaning of the applicable policy language).

8

Cup Foods has not alleged facts that, when taken as true, prove any distinct, demonstrable or physical alteration to its premises that, under Minnesota law, meets the Policy's definition of "physical loss" or "damage to property." Because Count I fails to state a plausible claim for relief, the Court grants Travelers' motion to dismiss as to Count I.

b. Count II: Civil-Authority Extension

The parties dispute whether the facts alleged by Cup Foods in support of Count II constitute a "prohibit[tion of] access" under the Policy's civil authority extension. Cup Foods argues that the City's decision to place barricades "was a sufficient prohibition to trigger civil authority coverage." Travelers responds that the City "[n]ever prohibited Cup Foods from accessing its own premises." At most, "the City's placement of cement barricades prohibited vehicles from traveling and parking on the street immediately in front of the store," Travelers contends. This action did not restrict *access* to Cup Foods, Travelers argues.

The term "prohibit" is defined as "to forbid by authority" or "to prevent from doing something." Merriam-Webster's Collegiate Dictionary 993 (11th ed. 2014). In the context of an insurance policy's civil authority extension, the term "prohibit" requires complete prohibition, not just that ease of access was diminished. *See NMA Invs.*, 2022 WL 4226226, at *5 (citing *TMC Stores, Inc. v. Federated Mut. Ins. Co.*, No. A04-1963,

9

2005 WL 1331700, at *4 (Minn. Ct. App. Jun. 7, 2005)); *S. Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F. 3d 1137, 1139–1142 (10th Cir. 2004) (collecting cases).[2]

The parties dispute whether a prohibition of access occurred when the City placed its barricades around the Intersection. Cup Foods argues that the City's "decision to place barricades was a sufficient prohibition to trigger civil authority coverage." Travelers disagrees. Because the facts alleged by Cup Foods show only that the City's actions had "the indirect effect of restricting or hampering access" to Cup Foods, *S. Hosp.*, 393 F.3d at 1141, Travelers argues, Cup Foods has not plausibly alleged that the City's actions *prohibited* access to Cup Foods within the meaning of the civil authority extension.

Cup Foods attempts to distinguish the cases that Travelers cites in support of its position. In doing so, Cup Foods relies on definitions of the term "prohibit" that contradict the weight of authority on this issue. *Compare, e.g.*, *Studio 417, Inc. v. Cincinnati Ins.*, 478 F. Supp. 3d 794, 800, 803–04 (W.D. Mo. 2020) (finding that plaintiffs adequately pleaded a claim under civil authority extension because policy in question requires that "the civil authority 'prohibits access,' but does not specify 'all access' or 'any access' ") *with S. Hosp.*, 393 F.3d at 1139–42 (requiring "a direct nexus between the civil authority [] and the suspension of the insured's business").

---

[2] Although neither *TMC Stores, Inc. v. Federated Mutual Insurance Co.*, No. A04-1963, 2005 WL 1331700 (Minn. Ct. App. Jun. 7, 2005), nor *Southern Hospitality, Inc. v. Zurich American Insurance Co.*, 393 F. 3d 1137, 1139–42 (10th Cir. 2004) are Minnesota Supreme Court cases, they are highly persuasive authority as, respectively, the "best evidence of Minnesota law," *Neth. Ins. Co. v. Main St. Ingredients, LLC*, 745 F.3d 909, 913 (8th Cir. 2014) (internal quotation marks omitted), and the "consensus majority rule," *NMA Invs.*, 2022 WL 4226226, at *5.

Moreover, Cup Foods' argument that Travelers' proposed interpretation "tortures the common meaning" of "prohibit" is not persuasive. Cup Foods has not pleaded facts that plausibly show the City forbade or prevented access to Cup Foods. *See* Merriam-Webster's Collegiate Dictionary 993 (11th ed. 2014). At most, Cup Foods' allegations show that the City's actions hindered such access or made access more difficult. Cup Foods admits that the City's placement of cement barricades caused only a "partial suspension" of business operations, and that customers could still enter the Intersection through gates or by using the sidewalk. Such facts do not support the conclusion that "City-placed barricades outlawed or barred all potential customers from accessing" Cup Foods. *NMA Invs.*, 2022 WL 4226226, at *5; see also *TMC Stores*, 2005 WL 1331700, at *4 ("Even if more difficult or less convenient access discouraged customers from patronizing TMC's store, this was not a prohibition of access."). Cup Foods' allegations do not indicate that the City prohibited access to Cup Foods.

Accordingly, Cup Foods has not alleged facts that, even taken as true, prove a prohibition sufficient to trigger the Policy's civil authority extension under Minnesota law. Count II, therefore, fails to state a plausible claim for relief. For this reason, the Court grants Travelers' motion as to Count II.

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED**:

1. Defendant Travelers Casualty Insurance Company of America's motion to dismiss, (Dkt. 15), is **GRANTED**.

2. Counts I and II of the amended complaint are **DISMISSED WITHOUT PREJUDICE**.

3. Pursuant to the stipulation of partial dismissal with prejudice of the second amended complaint (Count III only), (Dkt. 33), Count III of the amended complaint is **DISMISSED WITH PREJUDICE**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 23, 2023

s/Wilhelmina M. Wright
Wilhelmina M. Wright
United States District Judge